Judy C. SANTERRE, Plaintiff,

v.

AGIP PETROLEUM CO., INC., Defendant.

No. CIV.A. H–98–0557.

United States District Court, S.D. Texas.

March 29, 1999.

---

Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, TX, for Judy C. Santerre, Plaintiff.

Gene M. Williams, Mehaffey & Weber, D. Faye Caldwell, Caldwell & Adams, Houston, TX, for Agip Petroleum Company Inc, Defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Agip Petroleum Co. Inc.'s ("Agip") Motion to Dismiss (# 5). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Agip's motion should be denied.

## I. *Factual Background*

Plaintiff Judy C. Santerre ("Santerre") is a citizen of the United States who resides in Kingwood, Harris County, Texas. Agip is a Delaware corporation with its principal place of business in Houston, Texas. Santerre was hired by Agip in 1981 to work in its offices in Houston. From 1981 to 1993, she worked for Agip as a landman. On June 17, 1993, Santerre signed an employment contract with Agip to work at IEOC Co., Inc. ("IEOC"), a Panamanian corporation doing business in Cairo, Egypt. Santerre's 1993 contract was renewed on June 21, 1995. On January 30, 1996, Santerre signed a twenty-four month employment contract with Agip to relocate to London, England, to work at Agip (UK) Ltd. ("Agip UK"), a United Kingdom corporation. Eni S.p.A., an Italian corporation, is the majority shareholder of Agip, IEOC, and Agip UK.

On November 13, 1996, while working at Agip UK, Santerre filed a charge of employment discrimination against Agip with the Texas Commission on Human Rights ("TCHR") alleging sexual harassment and retaliation claims in violation of the Texas Commission on Human Rights Act ("TCHRA") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Santerre's original charge stated:

I am employed by Respondent as a Joint Venture Coordinator and have been employed with them for 16 years. I am currently on a contract where I am working with Respondent in London.

During the last several years continuing until recently, I have been subjected to a hostile working environment by Giorgio Pesenti an employee at another AGIP Company which is affiliated with Respondent. I have reported Mr. Pesenti's unwelcome advances which included letter writings, telephone calls and other such advances to the Respondent who has failed to take prompt remedial measures to end the harassment.

My reporting of this sexual harassment has resulted in a transfer to London to what essentially is a dead end position. This transfer is in retaliation for my reporting this sexual harassment.

On May 22, 1997, Santerre filed a supplemental affidavit amending her charge to include another retaliation claim, stating:

On April 22, 1997, at 10:00 a.m. Ernesto Sarpi came to my desk at my office in London and led me to his office stating that he wanted to talk to me. Mr. Sarpi stated that he did not realize that I had been on vacation in Houston for the Easter holiday. Mr. Sarpi stated that AGIP could relocate me to Houston with one condition. When I asked what the condition was, he stated that it was that I drop this discrimination suit. Mr. Sarpi used a hand gesture insinuating that my discrimination suit was of a petty nature. I explained to him that I could not drop my claim because it was very serious to me. Mr. Sarpi responded by telling me that he could not keep me in London. I asked Mr. Sarpi to clarify whether or not he was telling me to either drop the lawsuit or be fired. He responded by saying "you know I can't tell you that." I explained to Mr. Sarpi that my lawsuit was going forward and he insisted that I talk it over with my attorney. My response was that I was going to file the suit. Mr. Sarpi responded stating that he would speak to Mr. Fantini, the President of Agip but that he did not think that there was much negotiating room. He stated that Mr. Fantini did not want me in Houston

with the lawsuit over his head and that because he could not keep me in London, I did not fit in.

Santerre's 1995 employment contract expired without renewal in December 1997.

On November 12, 1997, Santerre received her right-to-sue letter from the TCHR. She filed suit under the TCHRA against Agip in the 270th Judicial District Court of Harris County, Texas, on November 17, 1997. Agip responded by filing a motion to abate the state court proceeding on January 12, 1998. On January 28, 1998, the state court granted Agip's motion. Santerre filed a notice of non-suit of the state court action on February 2, 1998.

Santerre brought the instant case in federal court on February 26, 1998, after receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on January 30, 1998. Agip's motion to dismiss asserts that Santerre's Title VII action should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or, alternatively, for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  *Analysis*

### A.  *Standards for Dismissal*

#### 1.  *Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)*

■ Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenge the subject matter jurisdiction of the district court. *See* FED. R. CIV. P. 12(b)(1). Subject matter jurisdiction must be ascertained before the court addresses other grounds for dismissal raised by the defendant. *See Marathon Oil Co. v. Ruhrgas,* 145 F.3d 211, 220 (5th Cir.), *cert. granted,* —— U.S. ——, 119 S.Ct. 589, 142 L.Ed.2d 532 (1998); *Aetna Cas. & Sur. Co. v. Iso–Tex, Inc.,* 75 F.3d 216, 218 (5th Cir.1996); *see also Hitt v. Pasadena,* 561 F.2d 606, 608 (5th Cir.1977). This requirement prevents a court without jurisdiction from prematurely dismissing a case with

prejudice. *See Fred v. State Bar of Tex.,* No. Civ. A. 5:98–CV–158–C, 1999 WL 68643, at *2 (N.D.Tex. Feb. 5, 1999). The court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits and does not prevent the plaintiff from pursuing the claim in a court that has proper jurisdiction. *See Hitt,* 561 F.2d at 608.

■ " 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.' " *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)); *accord Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996); *Ynclan v. Department of Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir.1989). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Fred,* 1999 WL 68643, at *1; *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D.Tex. 1995), *aff'd,* 102 F.3d 551 (5th Cir.1996). Accordingly, the plaintiff at all times bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981); *Menchaca,* 613 F.2d at 511.

When examining a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), unlike a motion under Rule 12(b)(6), the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark,* 798 F.2d at 741; *Williamson,* 645 F.2d at 413. "It is elementary that a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* "Jurisdictional issues are for the court—not a jury—to decide whether they hinge on legal or factual determinations" *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. Ry. Co.,* 754 F.2d 1247, 1248 n. 1 (5th Cir.1985). The court may also hold an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson,* 645 F.2d at 413; *see Menchaca,* 613 F.2d at 511–12. Nevertheless, "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assoc.,* 104 F.3d 1256, 1260 (11th Cir.1997) (citing *Simanonok v. Simanonok,* 787 F.2d 1517, 1519 (11th Cir.1986)).

"Attacks on subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia,* 104 F.3d at 1260–61 (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990)); *see Williamson,* 645 F.2d at 412; *Menchaca,* 613 F.2d at 511. "'Facial attacks on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."'" *Garcia,* 104 F.3d at 1261 (quoting *Lawrence,* 919 F.2d at 1529 (quoting *Menchaca,* 613 F.2d at 511)); *see Williamson,* 645 F.2d at 412. When a facial attack is involved, as with a motion under Rule 12(b)(6), "[a] motion under 12(b)(1) should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010 (citing *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992)).

"'"Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"'" *Garcia,* 104 F.3d at 1261 (quoting *Lawrence,* 919 F.2d at 1529 (quoting *Menchaca,* 613 F.2d at 511)); *see Williamson,* 645 F.2d at 413. "On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Garcia,* 104 F.3d at 1261 (citing *Lawrence,* 919 F.2d at 1529). If the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's cause of action:

> "[T]he trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Id.* (quoting *Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977))). If an attack on subject matter jurisdiction also implicates an element of the cause of action, however:

> [T]he proper course of action for the district court . . . is to find that jurisdic-

tion exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion .... [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id.* (quoting *Williamson,* 645 F.2d at 415–16).

■■■■■■ "[I]n cases where the basis of the federal jurisdiction is also an element of the plaintiff's federal cause of action, the United States Supreme Court has set forth a strict standard for dismissal for lack of subject matter jurisdiction." *Clark,* 798 F.2d at 741.

"Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that

the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.... The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."

*Id.* (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)); *see Haddon v. Walters,* 43 F.3d 1488, 1490 (D.C.Cir.1995); *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 n. 6 (5th Cir.1992); *Angela L. v. Pasadena Ind. Sch. Dist.,* 918 F.2d 1188, 1194 n. 7 (5th Cir.1990); *Brennan v. Stewart,* 834 F.2d 1248, 1255 (5th Cir.1988). Therefore, where the factual findings regarding subject matter jurisdiction are "intertwined with the merits," the case should not be dismissed for lack of subject matter jurisdiction unless the alleged claim is "immaterial or is wholly insubstantial and frivolous." *Clark,* 798 F.2d at 741–42 (citing *Williamson,* 645 F.2d at 413); *see Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 1007, 140 L.Ed.2d 210 (1998) ("Subject-matter jurisdiction exists if the right to recover will be sustained under one reading of the Constitution and laws and defeated under another, ... unless the claim clearly appears to be immaterial, wholly insubstantial and frivolous, or otherwise so devoid of merit as not to involve a federal controversy"); *Harline v. DEA,* 148 F.3d 1199, 1203 (10th Cir.1998); *Nowak,* 81 F.3d at 1189; *Brennan,* 834 F.2d at 1255 (citing *Eubanks v. McCotter,* 802 F.2d 790, 792–93 (5th Cir. 1986)). To be considered insubstantial, a claim must be obviously without merit or foreclosed by prior decisions. *See In re Carter,* 618 F.2d 1093, 1103 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). "The questions of

subject matter jurisdiction and the merits will normally be considered intertwined where the statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Clark,* 798 F.2d at 742 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.,* 711 F.2d 138, 139 (9th Cir.1983)); *see Miller v. Lifestyle Creations, Inc.,* 993 F.2d 883, 1993 WL 173724, at *1 (9th Cir. May 24, 1993); *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

### 2. *Dismissal for Failure to State a Claim under Rule 12(b)(6)*

In contrast, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief. It is not a procedure for resolving contests about the facts or the merits of a case. In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir.1999); *Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 (5th Cir.1997); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284–85 (5th Cir. 1993). The court may not look beyond the four corners of the plaintiff's pleadings. *See Indest,* 164 F.3d at 261; *Baker,* 75 F.3d at 196; *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). Thus, the motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jefferson,* 106 F.3d at 1250; *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995); *Leffall v. Dallas Indep. Sch.*

*Dist.,* 28 F.3d 521, 524 (5th Cir.1994); *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 556, 559 (5th Cir.1994); *McCartney,* 970 F.2d at 47.

Nevertheless, "'the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell,* 43 F.3d at 975 (quoting 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 156–59 (footnote omitted)). "'[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient." *Id.* (quoting 3 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216 at 163 (footnote omitted)). "'Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief ....'" *Id.* (quoting 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.–5] at 12–91 (footnote omitted)). "The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." *Id.* (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). "Further, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Id.* (quoting *Fernandez–Montes,* 987 F.2d at 284); *accord Jefferson,* 106 F.3d at 1250; *see Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994).

### B. *Issue Preclusion*

Agip contends that Santerre's suit should be dismissed for lack of subject matter jurisdiction because issue preclusion prevents Santerre from claiming that she was an employee of Agip, thereby making Title VII inapplicable to her lawsuit. Agip relies on certain actions taken by the parties in the state court proceeding, namely that: (1) Agip filed a motion to abate arguing that it was not Santerre's employer; (2) Santerre responded to

Agip's motion by attempting to prove the employment relationship; (3) Agip filed a reply further contesting the existence of an employer-employee relationship; and (4) the court granted Agip's motion to abate. Agip maintains that the state court's abatement triggered issue preclusion, consequently barring Santerre from filing a Title VII action in federal court.

■■■ "Issue preclusion, formerly known as collateral estoppel, applies when the following elements are met: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *Matter of Southmark Corp.,* 163 F.3d 925, 932 (5th Cir.1999) (citing *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995)); *see Matter of Gober,* 100 F.3d 1195, 1201 (5th Cir.1996); *Amica Mut. Ins. Co. v. Moak,* 55 F.3d 1093, 1097 (5th Cir.1995); *Meza v. General Battery Corp.,* 908 F.2d 1262, 1273 (5th Cir.1990); *J.M. Muniz, Inc. v. Mercantile Texas Credit Corp.,* 833 F.2d 541, 544 (5th Cir. 1987). "Relitigation of an issue is not precluded unless the facts and the legal standard used to assess them are the same in both proceedings." *Southmark Corp.,* 163 F.3d at 932 (citing at *RecoverEdge L.P.,* 44 F.3d at 1291).

■■■ "In deciding the preclusive effect of a state court judgment in federal court, [the court is] guided by the full faith and credit statute, which provides that 'judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.'" *Gober,* 100 F.3d at 1201 (quoting 28 U.S.C. § 1738). "Accordingly, [a court] must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect." *Id.* (citing *Marrese v. American Academy of Ortho-*

*paedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

■■■ "Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" *Id.* (quoting *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984)). Collateral estoppel, or issue preclusion, therefore, dictates that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see Ex parte Guinther,* 982 S.W.2d 506, 509 (Tex.App.—San Antonio 1998, no writ); *State v. Minor,* 981 S.W.2d 481, 482 (Tex.App.—Eastland 1998, no writ). In other words, "[a]pplication of collateral estoppel requires that there be a final judgment on the merits." *Gober,* 100 F.3d at 1201 (citing *Texas v. Wellington Resources Corp.,* 706 F.2d 533, 536–37 (5th Cir.1983)); *see Starnes v. Holloway,* 779 S.W.2d 86 (Tex.App.—Dallas 1989, writ denied) (citing *Gareis v. Gordon,* 243 S.W.2d 259, 260 (Tex.Civ.App.—Galveston 1951, no writ); *Ferguson v. Gleason,* 197 S.W.2d 863, 865 (Tex.Civ.App.—Amarillo 1946, no writ)). "A final judgment is one which disposes of all legal issues between all parties." *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) (citing *Hinde v. Hinde,* 701 S.W.2d 637, 639 (Tex.1985)); *Qwest Communications Int'l Inc. v. AT&T Corp.,* 983 S.W.2d 885, 887 (Tex.App.—Austin 1999, n.w.h.); *see National W. Life Ins. Co. v. Walters,* 663 S.W.2d 125, 126 (Tex.App.—Austin 1983, no writ). "[I]nterlocutory orders are not entitled to preclusive effect." *Gober,* 100 F.3d at 1201.

Here, the state district court granted Agip's motion to abate by order dated January 28, 1998. The court provided no analysis in its order, but merely stated,

"the Court GRANTS the motion and abates plaintiff's suit for ten (10) days, and if plaintiff does not cure such within ten (10) days, plaintiff's suit is dismissed with prejudice." On February 2, 1998, before the ten-day period expired, Santerre filed a notice of non-suit pursuant to Rule 162 of the Texas Rules of Civil Procedure, and the case was dismissed without prejudice.

■■■ The record, therefore, reflects that the order granting Agip's motion to abate was not a final judgment, as it did not dispose of all the issues between all the parties, but was merely an interlocutory order holding the suit in abeyance pending further action by Santerre. *See Browne v. Bear, Stearns & Co.,* 766 S.W.2d 823, 824 (Tex.App.—Dallas 1989, writ denied) (finding a ruling on a motion to abate to be an interlocutory order not reviewable on appeal). A plea in abatement is merely:

a plea which, without disputing merits of plaintiff's claim, objects to place, mode, or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer action on its merits, or deny existence of particular cause of action on which plaintiff relies. A plea in abatement sets forth facts extrinsic to merits which affect only manner in which action is framed or circumstances under which it is sought to be prosecuted, and does not destroy the right of action but merely suspends or postpones its prosecution.

BLACKS LAW DICTIONARY, 1151 (6th ed.1993); *see Mercure Co., N.V. v. Rowland,* 715 S.W.2d 677 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Piper v. Estate of Thompson,* 546 S.W.2d 341, 343 (Tex.Civ. App.—Dallas 1976, no writ). Santerre's notice of non-suit prior to the court's ten-day deadline prevented the sustained plea in abatement from becoming a final judgment. Had Santerre not non-suited the action, however, in the absence of corrective action, the order sustaining Agip's plea in abatement would have become a final judgment disposing of the entire case.

*See Black v. San Antonio Express,* 458 S.W.2d 100, 101 (Tex.App.—San Antonio 1970, no writ) (holding that a sustained plea in abatement became a final judgment where the plaintiff failed to file a motion for new trial within the required time period or perfect an appeal from that judgment).

■■■ Similarly, it is apparent that Santerre's non-suit did not give rise to a final judgment on the merits. *See Terry v. Howard,* 546 S.W.2d 66, 69 (Tex.Civ. App.—Dallas 1976, no writ) ("the mere filing of a motion of nonsuit cannot begin to run the court's jurisdictional time period since a rendition of final judgment is required"). "[A] non-suit is a termination of the pleaded causes of action and asserted defenses without an adjudication of their merits that returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction." *Rexrode v. Bazar,* 937 S.W.2d 614, 619 (Tex.App.— Amarillo 1997, no writ) (citing *Molinar v. Plains Ins. Co.,* 660 S.W.2d 845, 849 (Tex. App.—Amarillo 1983, no writ)). "That being so, the taking of a voluntary non-suit does not constitute litigation of the issues in a case and does not prejudice the parties against seeking the same relief in a subsequent lawsuit." *Rexrode,* 937 S.W.2d at 619 (citing *Ashpole v. Millard,* 778 S.W.2d 169, 171 (Tex.App.—Houston [1st Dist.] 1989, no writ); *In re T.N.V.,* 855 S.W.2d 102, 103 (Tex.App.—Corpus Christi 1993, no writ)).

■■■ With regard to the right to take a non-suit, Rule 162 provides:

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21a on any party who has answered or has been served with process without necessity of court order.

TEX. R. CIV. P. 162; *see Rexrode*, 937 S.W.2d at 619 (citing *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex. 1995)). "A plaintiff's right to this sort of dismissal is unqualified and absolute as long as a defendant has not made a claim for affirmative relief." *Rexrode*, 937 S.W.2d at 619 (citing *KT Bolt Mfg. Co. v. Texas Elec. Cooperatives, Inc.*, 837 S.W.2d 273, 275 (Tex.App.—Beaumont 1992, writ denied)). "Rule 162 was designed to allow a plaintiff to avoid unexpected emergencies . . . ." *Rexrode*, 937 S.W.2d at 619 (citing *Hoodless v. Winter*, 80 Tex. 638, 16 S.W. 427 (1891); 5 R. McDONALD, TEXAS CIVIL PRACTICE § 27:39 (John S. Covell ed., 1992)).

Where, as here, a dismissal is without prejudice, then "the claimant has the right to sue again on the same cause of action and prevents 'the decree of dismissal from operating as a bar to a subsequent suit.' " *McConnell v. Attorney Gen. of Tex.*, 878 S.W.2d 281, 283 (Tex.App.—Corpus Christi 1994, no writ) (quoting BLACK'S LAW DICTIONARY 469 (6th ed.1990)); *see Olivares v. Western Fire Ins. Co.*, No. 04–94–00556–CV, 1996 WL 383091, at *18 (Tex.App.—San Antonio July 20, 1996, writ denied); *see also Transamerica Ins. Co. v. Frost Nat'l Bank of San Antonio*, 501 S.W.2d 418, 422 (Tex. Civ.App.—Beaumont 1973, no writ); *Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App.—Houston [14th Dist.] 1992, writ denied). "If a suit is dismissed without prejudice, res judicata has not occurred." *McConnell*, 878 S.W.2d at 283 (citing *Bell*, 832 S.W.2d at 755); *Olivares*, 1996 WL 383091, at *18.

"[T]he right to voluntarily dismiss a suit is without prejudice to a reassertion of the matters asserted in the dismissed suit, and a voluntary dismissal with permission of the court does not bar the assertion of the same cause of action in a subsequent suit." *Matter of J.A.L.*, 608 S.W.2d 819, 821 (Tex.Civ.App.—Amarillo 1980, no writ) (citing *Scherff v. Missouri Pac. Ry. Co.*, 81 Tex. 471, 17 S.W. 39, 40

(1891)); *Payne v. Nichols*, 176 S.W.2d 961, 963 (Tex.Civ.App.—Galveston 1943, writ ref'd w.o.m.)). "By seeking the court's permission to nonsuit [the state court action], [Santerre] neither invited a determination of the merits nor requested a dismissal with prejudice so as to bar [her] from later asserting the same cause of action." *See id.* (citing 4 R. McDONALD, TEXAS CIVIL PRACTICE § 17:14 (John S. Covell ed., 1992)). "Further indicative of nonadjudication of the merits in that cause is that the court, in granting [Santerre's] motion, rendered a judgment of dismissal, not a dismissal with prejudice which would signify an adjudication and denial of [Santerre's] claim." *See id.* (citing *Murphy v. Stigall*, 352 S.W.2d 918, 919 (Tex.Civ. App.—San Antonio 1961, writ ref'd)); *Schenker v. City of San Antonio*, 369 S.W.2d 626, 630 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.). In this instance, the dismissal was a final order, but it was not a final judgment on the merits of the case. *See State v. Minor*, 981 S.W.2d 481, 482 (Tex.App.—Eastland 1998, pet. filed) (citing *Brown v. Prairie View A & M Univ.*, 630 S.W.2d 405, 408 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.)).

Under these circumstances, neither the granting of Agip's motion to abate nor the dismissal of the case after Santerre gave notice of non-suit constituted a final judgment on the merits having preclusive effect. Moreover, the issues in controversy were not identical, as, unlike Title VII, the TCHRA has no extraterritorial effect and is inapplicable "with respect to the employment of a person outside this state." *See* TEX. LAB. CODE § 21.111. Accordingly, Santerre is not precluded from asserting her Title VII claims in the case at bar.

### C. *Applicability of Title VII*

Agip also contends that Santerre's suit should be dismissed for lack of subject matter jurisdiction because Title VII, the statute under which Santerre claims federal jurisdiction, does not apply

in this situation. Specifically, Agip contends that Santerre's Title VII claims are foreclosed because she was not an employee of Agip at the time she suffered the alleged discrimination, nor did Agip control IEOC or Agip UK, the foreign corporations where she worked.[1] Santerre disagrees, arguing that, because there is sufficient evidence to establish an employee-employer relationship, Agip's control over IEOC and Agip UK is irrelevant.[2]

■■■ In this case, "Title VII both conveys jurisdiction and creates a cause of action." *Clark*, 798 F.2d at 742; *accord Miller*, 993 F.2d 883, 1993 WL 173724, at *1; *see St. Germain v. Simmons Airline*, 930 F.Supp. 1144, 1146 (N.D.Tex.1996); *Barnes v. Colonial Life & Acc. Ins. Co.*, 818 F.Supp. 978, 980 (N.D.Tex.1993). The plaintiff's status as an "employee" and the defendant's status as an "employer" are jurisdictional requirements for recovery under Title VII. *See EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 259, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340 (11th Cir.1999); *Miller*, 993 F.2d 883, 1993 WL 173724, at *1; *Diggs v. Harris Hosp.-*

*Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988); *Virapen v. Eli Lilly*, S.A., 793 F.Supp. 36, 39 n. 3 (D.P.R.1992), *aff'd*, 66 F.3d 307 (1st Cir. 1995); *see also Norman v. Levy*, 756 F.Supp. 1060, 1062 (N.D.Ill.1990). Yet, whether Santerre "was an employee is 'intertwined with the facts central to the merits of the dispute' because employment is an element of the Plaintiff's case." *McGinnis v. Southeast Anesthesia Assocs., P.A.*, 161 F.R.D. 41, 44 (W.D.N.C.1995) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982); *accord Garcia*, 104 F.3d at 1265 (citing *Clark*, 798 F.2d at 742); *Wheeler*, 825 F.2d at 259). To prevail under Title VII, Santerre "must show not simply that she was discriminated against, but that she was discriminated against with respect to a term or condition of employment." *McGinnis*, 161 F.R.D. at 44. "Because the factual findings regarding subject matter jurisdiction are intertwined with the merits of a Title VII case, the Court will not dismiss the case for lack of subject matter jurisdiction unless Plaintiff's claim to be an employee is wholly

---

1. Title VII defines an "employee" as:

   an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

   42 U.S.C. § 2000e(f). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person...." 42 U.S.C. § 2000e(b).

2. In the situation where an American employer controls a corporation incorporated in a foreign country:

   (1) If an employer controls a corporation whose place of incorporation is a foreign country, any practice prohibited by section 2000e–2 or 2000e–3 of this title engaged in by such corporation shall be presumed to be engaged in by such employer.
   (2) Sections 2000e–2 and 2000e–3 of this title shall not apply with respect to the foreign operations of an employer that is a foreign person not controlled by an American employer.
   (3) For purposes of this subsection, the determination of whether an employer controls a corporation shall be based on—
   (A) the interrelation of operations;
   (B) the common management;
   (C) the centralized control of labor relations; and
   (D) the common ownership or financial control, of the employer and the corporation.

   42 U.S.C. § 2000e–1(c).

insubstantial and frivolous." *Barnes*, 818 F.Supp. at 980 (citing *Clark*, 798 F.2d at 741–42). In view of Santerre's proffer of three employment contracts between Agip and Santerre, her inclusion in Agip's payroll, and other evidence suggesting Agip's exercise of control over her activities, it cannot be said that Santerre's assertion that she is a Title VII employee of Agip is frivolous or insubstantial.[3]

Accordingly, because Santerre's status as a Title VII employee is intertwined with the merits of her Title VII claim, dismissal of Santerre's claim for lack of subject matter jurisdiction would be improper. *See Clark*, 798 F.2d at 743; *McGinnis*, 161 F.R.D. at 44. "[T]o allow the [court] to decide the 'employer' issue, is to allow the judge (and not the jury) to also indirectly decide the 'employee' issue." *Garcia*, 104 F.3d at 1265. "[T]his dispute should be decided in a proceeding on the merits—not on a challenge to the Court's subject matter jurisdiction." *McGinnis*, 161 F.R.D. at 44 (citing *Bain*, 697 F.2d at 1219). As the Fifth Circuit explained in *Clark*, "[w]here the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, and assuming that the plaintiff's federal claim is neither insubstantial, frivolous, nor made solely for the purpose of obtaining jurisdiction, the district court should find that it has jurisdiction over the case and deal with the defendant's challenge as an attack on the merits." 798 F.2d at 741 (citing *Williamson*, 645 F.2d

at 415); *see Bell*, 327 U.S. at 682–83, 66 S.Ct. 773; *Garcia*, 104 F.3d at 1266.

Nevertheless, these issues are not currently in the correct procedural posture for resolution on the merits. Rather, if the parties wish to raise these matters, they shall file motions for summary judgment supported by competent summary judgment evidence addressing Santerre's alleged status as an employee of Agip, Agip's purported control over IEOC and Agip UK, and Agip's potential liability for the alleged discriminatory acts of third parties.

### D. Timeliness of Title VII Claims

■ In its motion to dismiss, Agip further contends that Santerre fails to state a claim upon which relief can be granted because she filed this action sixteen days past the ninety-day filing period set forth in Title VII—106 days after she received a right-to-sue letter from the TCHR on October 8, 1997. In addition, Agip argues in its reply brief that Santerre's Title VII claims are time-barred because they did not occur within 300-days of her charge of discrimination.[4] As to both contentions, Santerre asserts that her Title VII claims are timely.

■ "A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992); *see Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir.1988); *Espinoza*, 754

---

3. The decisions of the Texas Employment Commission in connection with Santerre's claim for unemployment benefits are not dispositive or probative of this issue. In fact, Texas law expressly prohibits the use of such evidence in another action. A provision of the Texas Labor Code states:

   Collateral Estoppel Doctrine Inapplicable

   A finding of fact, conclusion of law, judgment, or final order made regarding a claim for benefits under this subtitle is not binding and may not be used as evidence in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is

between the same or related parties or involves the same facts.

TEX. LAB. CODE ANN. § 213.007.

4. Because Agip did not address the 300-day limitations period in its motion to dismiss or supporting memorandum, but raised it for the first time in its reply brief, this issue is not properly before the court. *See Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1026 (5th Cir.1992); *Roberts v. Board of Educ.*, 25 F.Supp.2d 866, 868 n. 3 (N.D.Ill. 1998); *In re AES Corp. Sec. Litig.*, 825 F.Supp. 578, 593 n. 20 (S.D.N.Y.1993).

F.2d at 1250; *see also* 42 U.S.C. § 2000e–5(f). Title VII provides that: ·

> if the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

*Espinoza,* 754 F.2d at 1248 (quoting 42 U.S.C. § 2000e–5(f)(1)). The filing requirements of Title VII, however, are not jurisdictional prerequisites to bringing suit in federal court, but are more akin to statutes of limitation and are subject to the doctrines of waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see also Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Underwood v. Wilson,* 151 F.3d 292, 294 (5th Cir.1998); *Nilsen v. City of Moss Point,* 701 F.2d 556, 562 (5th Cir.1983). Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances, "it is a statutory precondition to the maintenance of any action under Title VII" in federal court. *Smith v. Flagship Int'l,* 609 F.Supp. 58, 61 (N.D.Tex.1985) (citing *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1070 (5th Cir. 1981)).

■ In addition, in Texas, to maintain a Title VII claim, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.,* 139 F.3d 532, 537 (5th Cir.1998); *Griffin v. City of Dallas,* 26 F.3d 610, 612–13 (5th Cir.1994); *Anson v. University of Tex. Health Science Ctr.,* 962 F.2d 539, 540 (5th Cir.1992); 42 U.S.C. § 2000e–5(e)(1). Generally, the limitations period begins on the date the discriminatory act occurred,

and a plaintiff cannot sustain her claims based on incidents that occurred more than 300 days before the filing of a charge of discrimination. *See Webb,* 139 F.3d at 537; *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989).

■ The courts, however, have recognized an equitable exception " 'where the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.' " *Webb,* 139 F.3d at 537 (quoting *Waltman,* 875 F.2d at 474) (quoting *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir.1986)). In order to extend the statute of limitations under this exception, known as a continuing violation, the plaintiff must show a series of related acts, one or more of which falls within the 300–day limitations period. *See Webb,* 139 F.3d at 537; *Messer,* 130 F.3d at 134–35; *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997); *EEOC v. Harvey L. Walner & Assocs.,* 91 F.3d 963, 969 (7th Cir.1996); *Mascheroni v. Board of Regents,* 28 F.3d 1554, 1561 (10th Cir. 1994); *Waltman,* 875 F.2d at 474; *see also Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). If none of the alleged acts occurred within 300 days of the filing of the EEOC charge, however, the plaintiff's cause of action for employment discrimination is time-barred. *See Delaware State College,* 449 U.S. at 258, 101 S.Ct. 498; *Waltman,* 875 F.2d at 474–75; *Abrams,* 805 F.2d at 533.

Here, the question of limitations cannot be resolved on the basis of the complaint alone, as necessary for dismissal under Rule 12(b)(6). Because evidence outside the record must be considered to determine the dates on which the alleged discriminatory acts occurred and to assess the applicability of equitable tolling and/or the continuing violation theory, dismissal under Rule 12(b)(6) for failure to state a claim is not permitted. The court may not

properly dismiss a case as time-barred under Rule 12(b)(6) when the pleadings do not show on their face that relief is barred by limitations. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Therefore, the parties should proceed by summary judgment on these issues, as well.

### E. *Treaty of Friendship, Commerce, and Navigation*

■ Agip also asserts that Santerre fails to state a claim upon which relief can be granted because her Title VII action is barred by the Treaty of Friendship, Commerce and Navigation Between the United States of America and the Italian Republic ("FNC Treaty").[5]

Similar treaties have been held not to conflict with Title VII, which forbids discrimination on the basis of race and national origin, but does not prohibit discrimination on the basis of citizenship. *See Fortino v. Quasar Co.*, 950 F.2d 389, 392 (7th Cir.1991). While "the FCN treaty 'permits discrimination on the basis of citizenship, not of national origin; Title VII forbids discrimination on the basis of national origin, not of citizenship.'" *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 935 (7th Cir.1997) (citing *Fortino*, 950 F.2d at 391–92); *see, e.g., MacNamara v. Korean Air Lines*, 863 F.2d 1135, 1148 (3d Cir.1988), *cert. denied*, 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989) (holding that the treaty allowed Korean Air Lines to favor Korean nationals because of their citizenship only, but did not allow them to discriminate against non-Korean citizens because of their age, race or national origin).

Several courts have held that the "of their choice" treaty language protects subsidiaries of foreign companies with operations in the United States from employment decisions dictated by the parent. *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059 (5th Cir.1998); *Weeks*, 126 F.3d at 935; *Papaila v. Uniden Am. Corp.*, 51 F.3d 54, 56 (5th Cir.), *cert. denied*, 516 U.S. 868, 116 S.Ct. 187, 133 L.Ed.2d 124 (1995); *Fortino*, 950 F.2d at

**5.** Article I of the FNC Treaty reads:

1. The nationals of either High Contracting Party shall be permitted to enter the territories of the other High Contracting Party, and shall be permitted freely to reside and travel therein.

2. The nationals of either High Contracting Party shall, within the territories of the other High Contracting Party, be permitted, without interference, to exercise, in conformity with the applicable laws and regulations, the following rights and privileges upon terms no less favorable than those now or hereafter accorded to nationals of such other High Contracting Party:

   (a) to engage in commercial, manufacturing, processing, financial, scientific, educational, religious, philanthropic and professional activities except the practice of law;

   (b) to acquire, own, erect or lease, and occupy appropriate buildings, and to lease appropriate lands, for residential, commercial, manufacturing, processing, financial, professional, scientific, educational, religious, philanthropic and mortuary purposes;

   (c) to employ agents and employees of their choice regardless of nationality; and

   (d) to do anything incidental to or necessary for the enjoyment of any of the foregoing rights and privileges.

3. Moreover, the nationals of either High Contracting Party shall not in any case, with respect to the matters referred to in paragraphs 1 and 2 of this Article, receive treatment less favorable than the treatment which is or may hereafter be accorded to the nationals of any third country.

4. The provisions of paragraphs 1 of this Article shall not be construed to preclude the exercise by either High Contracting Party of reasonable surveillance over the movement and sojourn of aliens within its territories or the enforcement of measures for the exclusion of expulsion of aliens for reasons of public order, morals, health or safety.

Treaty of Friendship, Commerce and Navigation Between the United States of America and the Italian Republic, Feb. 2, 1948, U.S.-Italy, 63 Stat. 2255, T.I.A.S. No.1965 (footnote omitted).

393; *MacNamara*, 863 F.2d at 1148. Under such a treaty, a foreign parent corporation is free to discriminate on the basis of citizenship. *See Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185–89, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1401 (7th Cir.1997). This entitlement does not extend, however, to a domestic subsidiary of a foreign corporation, even if wholly owned. *See Avagliano*, 457 U.S. at 185–89, 102 S.Ct. 2374; *Wallace*, 103 F.3d at 1401. If the parent dictates the personnel decisions of the American subsidiary, however, those decisions fall within the scope of the treaty. *See Wallace*, 103 F.3d at 1401 (citing *Fortino*, 950 F.2d at 393; *Papaila*, 51 F.3d 54, 56); see also Bennett, 138 F.3d at 1059.

In *Fortino*, the Seventh Circuit concluded that a wholly-owned American subsidiary of a Japanese company could assert its parent's rights under the Japan FCN Treaty to the extent that the parent dictated the subsidiary's alleged discriminatory conduct. *See* 950 F.2d at 393; *see also Weeks*, 126 F.3d at 935. The parent company maintained a practice of assigning several of its financial and marketing executives to the subsidiary on a temporary basis. *See Fortino*, 950 F.2d at 393. These "expatriates" were employees of the subsidiary and were under its day-to-day control, yet they also retained their status as employees of the parent company. *See id.* at 392. The parent evaluated their performance, kept their personnel records, fixed their salaries, and assisted with the relocation of their families to the United States. *See id.* The plaintiffs in *Fortino* were American executives discharged by a Japanese expatriate put in charge .of the subsidiary by the parent to prevent the recurrence of a massive loss in profits. *See id.* The Japanese executive proceeded to do so by reorganizing the company and reducing the workforce by half. *See id.* No Japanese expatriates were terminated, although two were rotated back to Japan and replaced by a single new expatriate. *See id.* The court held that the subsidiary

was entitled to prevail on the basis of the treaty, reasoning that "[a] judgment that forbids [the subsidiary] from giving preferential treatment to the expatriate executives that its parent sends would have the same effect on the parent as it would have if it ran directly against the parent: it would prevent [the parent] from sending its own executives to manage [the subsidiary] in preference to employing American citizens in such posts." *Id.* at 393. The court further noted, "[t]he exercise of a treaty right may not be made the basis for inferring a violation of Title VII." *Id.*

In *Papaila*, following the lead of the Seventh Circuit in *Fortino*, the Fifth Circuit held that a wholly-owned American subsidiary of a Japanese entity could invoke its parent's rights under the Japan FCN Treaty with respect to employment decisions dictated by the parent. *See* 51 F.3d at 56. As in *Fortino*, the parent company assigned "expatriate" employees to work for the subsidiary on a temporary basis. *See id.* at 55 n. 1. The expatriates were sent to protect the parent's rights in the subsidiary and were subject to transfer at the parent's request. *See id.* The parent set the expatriates' salaries, wages, benefits and hours, directed that the subsidiary maintain a separate payroll account for the expatriates, and evaluated their job performance. *See id.* The American plaintiff in *Papaila* alleged that Japanese expatriates received favorable treatment in terms of salaries, benefits, and job protection. *See id.* at 56. Relying on the treaty, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the subsidiary with respect to allegedly discriminatory employment decisions dictated by the parent. *See id.*

In *Bennett*, the Fifth Circuit recently held that a wholly-owned American subsidiary of a French company could invoke its parent's rights under the Convention of Establishment between the United States and France with respect to employment decisions dictated by the parent. *See* 138

F.3d at 1059. As in *Fortino* and *Papaila*, the parent company maintained a practice of assigning "expatriate" employees to the subsidiary on a temporary basis. *See id.* at 1056. These expatriates were directed to undertake several corporate restructurings in response to a decline in the oil industry. *See id.* As part of these restructurings, non-French managers were transferred, demoted, or terminated and were replaced by French managers. *See id.* The plaintiff in *Bennett* alleged that his transfer was unlawfully based upon his age, national origin, and race. *See id.* at 1057. The Fifth Circuit, however, concluded that French companies operating in the United States had the right to discriminate in favor of French citizens due to their citizenship when replacing non-French managers. *See id.* at 1059. The Fifth Circuit noted, however, that "[w]e need not decide whether [the Convention] immunizes French companies to the extent urged [by the defendant] because the record contains no evidence that [the plaintiff] was discriminated against on any basis other than his citizenship." *Id.*

Agip maintains that the "of their choice" language contained in Article I(2)(c) of the FNC Treaty immunizes it from Santerre's Title VII claims. Agip's contention, however, is misplaced. Unlike the situation in *Fortino*, *Papaila*, and *Bennett*, the record contains no evidence that Eni S.p.A. required Agip to take the disputed employment actions with regard to Santerre. Agip also appears to overlook the "regardless of nationality" proviso following the "of their choice" language in the treaty. While such a treaty may protect a subsidiary from liability for employment decisions dictated by its parent, the protection extends only to employment decisions based on citizenship. *See Morelli v. Cedel*, 141 F.3d 39, 43 (2d Cir.1998) ("even when a foreign employer operating in the United States can invoke a Friendship, Commerce and Navigation treaty to justify employing its own nationals, this 'does not give [the employer] license to violate American laws prohibiting discrimination in employ-

ment'"); *MacNamara*, 863 F.2d at 1141 ("a foreign business may not deliberately undertake to reduce the age of its workforce by replacing older Americans with younger foreign nationals"); *see also Bennett*, 138 F.3d at 1059; *Papaila*, 51 F.3d at 56; *Fortino*, 950 F.2d at 393.

In this case, Santerre alleges discrimination based on her gender and her participation in Title VII-protected activity, not her citizenship. Therefore, the FNC Treaty does not shield Agip from liability to Santerre under Title VII. The basic "purpose of the treaties was not to give foreign corporations greater rights than domestic companies, but instead to assure them the right to conduct business on an equal basis without suffering discrimination based on their alienage." *Avagliano*, 457 U.S. at 188, 102 S.Ct. 2374. Accordingly, the FNC Treaty provides no support for the dismissal of Santerre's action.

## III. *Conclusion*

Neither the state court's abatement of Santerre's action under the TCHR nor the terms of the FNC Treaty preclude Santerre from maintaining her cause of action for employment discrimination under Title VII in this court. Morever, based on the complaint alone, the court cannot conclude that her claims are barred by limitations, making dismissal for failure to state a claim improper. Similarly, because Agip's jurisdictional challenge to Santerre's action is intertwined with the merits of her Title VII claims, dismissal for lack of subject matter jurisdiction is not warranted.

Accordingly, Agip's motion to dismiss is DENIED. Subject to the court's rulings on any summary judgment motions submitted by the parties, Santerre may proceed to trial on her Title VII claims against Agip.

IT IS SO ORDERED.