**Sean T. HADDON, Plaintiff,**

v.

**Gary J. WALTERS, Chief Usher, The Executive Residence, Defendant.**

**Civ. A. No. 93–1254.**

United States District Court, District of Columbia.

Sept. 20, 1993.

Rodney Ray Sweetland, III, Washington, DC, for plaintiff.

Margaret Susan Hewing, Anne Marie Gulyassy, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendant.

*MEMORANDUM OPINION*

SPORKIN, District Judge.

Now before the Court is Defendant's Motion to Dismiss. This is an employment discrimination case filed under Title VII of the Civil Rights Act of 1964, as amended. Plaintiff Sean Haddon is a chef employed at the White House. Mr. Haddon is suing Gary Walters, the Chief Usher of the Executive Residence. The relief sought includes a promotion which Mr. Haddon says he was illegally denied, as well as the expungement of a mediocre performance evaluation. Because the Court agrees with the Defendant that the Court lacks jurisdiction to hear this claim, Defendant's motion to dismiss will be granted.

### I. *The Allegations*

Plaintiff Sean Haddon makes two claims against the White House Chief Usher. Mr. Haddon alleges that he was denied a position as sous-chef at the Executive Residence because he does not speak the French language and because he is married to an African–American woman. Mr. Haddon asserts that the sous-chef position was given to an individual of equal or lesser qualifications who is not married to an African–American and who speaks the French language. Thus, his first claim is of disparate treatment.

Mr. Haddon also alleges that after requesting a meeting with an equal employment opportunity counselor, an employee of the Executive Residence threatened to "beat the shit" out of him. He was also given a less than exemplary performance evaluation for the first time. In addition, Mr. Haddon asserts that because of his efforts to obtain fair treatment, the defendant Gary Walters contacted the Federal Bureau of Investigation and falsely accused Mr. Haddon of threatening the President and the First Family with physical harm. As a result of these false accusations, Mr. Haddon was physically escorted from the White House, had his White House pass confiscated, and was placed on administrative leave. Mr. Haddon maintains that he was completely exonerated by a subsequent Secret Service investigation. His second claim therefore is for retaliation.

### II. *Contentions of the Parties*

Both parties agree that whether this case survives the motion to dismiss boils down to a question of statutory interpretation. Mr.

Haddon asserts that as a low-level White House employee who has no personal connection to the President, he is entitled to sue under 42 U.S.C.A. § 2000e–16 which bars "discrimination based on race, color, religion, sex, or national origin" in executive agencies. In support of his assertion that this Court has jurisdiction to entertain such a claim, Mr. Haddon provides evidence that on a previous occasion when an employee of the Executive Residence initiated an EEO complaint during the Nixon Administration, the Executive Residence complied with the procedures outlined in Title VII of the Civil Rights Act. As further evidence of Title VII coverage of White House chefs, Mr. Haddon points to the fact that the government has on one previous occasion in an employment dispute concerning the White House Fellows program stipulated that White House Fellows are covered by the 1972 amendments to the Civil Rights Act. Because of this, Mr. Haddon reasons that employees of the Executive Residence, "who are engaged in positions of far lesser responsibility than White House Fellows" must necessarily be covered as well.[1] Mr. Haddon makes other arguments based on the fact that his Office of Personnel Management Form 50–B indicates that the position he occupies is in the excepted service, and that his position is covered by the Fair Labor Standards Act.

By contrast, Defendant Walters points to two other provisions of the United States Code which, he argues, provide a double-barrelled justification to deny jurisdiction. First, Mr. Walters points to 3 U.S.C. § 105(b)(1) which reads in part:

[T]he President is authorized to appoint and fix the pay of employees in the Executive Residence at the White House *without regard to any other provision of law regulating the employment or compensation of persons in Government service.* Employees so appointed shall perform such official duties as the President may prescribe.

(emphasis added). This provision, Mr. Walters contends, dispenses with any suggestion that employees of the Executive Residence are covered by the 1972 amendments to the Civil Rights Act because it establishes that the President has complete discretion to hire and fire the domestic staff of the White House, for whatever reason the President chooses.

Defendant Walters next argues that if any civil rights laws apply to employees of the Executive Residence, those provisions are found in Section 320 of the Government Employee Rights Act of 1991, 2 U.S.C. § 1219. This section of the Code extends protection against employment discrimination to Presidential appointees. *See* 2 U.S.C.A. § 1219(a)(1).[2] Subsection (b) defines a Presidential Appointee to mean:

any officer or employee, or an applicant seeking to become an officer or employee, in any unit of the Executive Branch, including the Executive Office of the President, whether appointed by the President or by any other appointing authority in the Executive Branch, who is not already entitled to bring an action under any of the statutes referred to in section 1202 of this title but does not include any individual—

(1) whose appointment is made by and with the advice and consent of the Senate;

(2) who is appointed to an advisory committee, as defined in section 3(2) of the Federal Advisory Committee Act (5 U.S.C.App.); or

(3) who is a member of the uniformed services.

2 U.S.C.A. § 1219(b). This provision differs in the protection extended under the 1972 amendments in that it does not contemplate a lawsuit in District Court. Instead, the aggrieved party must first file a complaint with the Equal Employment Opportunity Commission. 2 U.S.C.A. § 1219(a)(2). If unsatisfied with the EEOC's resolution of the complaint, the aggrieved party may petition

---

1. At oral argument on this motion Counsel for the plaintiff insisted that Mr. Haddon sees the President at most twice a year on the White House lawn.

2. This provision prohibits employment discrimination by the President in the same way that employees of the United States Senate are protected against employment discrimination by 2 U.S.C.A. § 1202.

for review of the final order to the United States Court of Appeals for the Federal Circuit. 2 U.S.C.A. § 1219(a)(3)(A). Defendant Walters argues that while the employees of the Executive Residence may be covered under the 1991 amendments of the Civil Rights Act, the only possible forum for judicial review of an adverse employment decision is the Court of Appeals for the Federal Circuit—not this Court.

### III. *Analysis*

For the purpose of a motion to dismiss, all the facts as alleged by the plaintiff must be taken as true. Mr. Haddon is an employee at the Executive Residence—the White House. By statute, the President of the United States is authorized to "appoint and fix the pay of employees in the Executive Residence at the White House without regard to any other provision of law regulating the employment or compensation of persons in the Government service." 3 U.S.C.A. § 105(b)(1). This statute on its face appears to establish that workers in the White House Executive Residence are employees at will. Nothing in the statutes referred to by Mr. Haddon contradict this conclusion. Nor is this position changed by the fact that previous White House employment disputes have been resolved by reference to E.E.O.C. procedures.

Attempts to limit the President's power to hire and fire those who work in his own home must be carefully and thoughtfully drawn. We speak here of individuals who occupy positions in close physical proximity to the President. Indeed the White House chefs are involved in one of the most intimate aspects of the First Family's lives—food preparation. To say that the President cannot with impunity fire, or delegate the authority to fire one of these employees is to strike at the very heart of the President's authority to manage his own household.

But beyond the question of limiting the President's ability to hire and fire his own domestic help, there is the added problem of providing a judicial forum for the resolution of claims by employees who have been let go. Without making any judgment on the truth of Mr. Haddon's allegations, it is undeniable that for this Court to subject the White House to all the burdens of civil discovery in an employment discrimination suit raises problems of constitutional magnitude. If the statute were interpreted to expose the President to the strictures of Title VII, then the President of the United States would be compelled to submit to interrogatories and depositions about his hiring practices in the Executive Residence. Had the Congress intended to so encumber the President in passing the 1972 amendments to the Civil Rights Act, or the 1991 Act to which the Government refers, it should have so specified in the text of the statute.

Fortunately, this Court need not rule on all of these difficult constitutional issues. It is enough to say that the employees of the Executive Residence are not covered by 42 U.S.C. § 2000e–16. As such, this Court lacks jurisdiction to hear this dispute.

### ORDER

Upon consideration of Defendant's Motion to Dismiss, Plaintiff's responses, and oral argument of the parties, for the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Defendant's motion to dismiss be granted.