Sean T. HADDON, Appellant,

v.

Gary J. WALTERS, Chief
Usher, Appellee.

No. 93–5303.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 1994.

Decided Jan. 10, 1995.

Rodney R. Sweetland, Washington, DC, argued the cause and filed the briefs, for appellant.

Mark B. Stern, Atty., U.S. Dept. of Justice, with whom Frank W. Hunger, Asst. Atty. Gen., and Eric H. Holder, Jr., U.S. Atty., Washington, DC, were on the brief, for appellee. Margaret S. Hewing, Washington, DC, entered an appearance, for appellee.

Before BUCKLEY, GINSBURG, and SENTELLE, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Sean Haddon, a former White House chef, filed an employment discrimination suit against Gary Walters, the White House Chief Usher. The district court dismissed the complaint for want of subject-matter jurisdiction. We find that the court erred in so finding; but because we hold that Mr. Haddon has failed to state a claim on which relief could be granted, we affirm the judgment.

## I. BACKGROUND

### A. Factual and Procedural History

Mr. Haddon is a white male who served as an assistant chef at the White House ("White House" or "Executive Residence") from July 1988 to March 25, 1994. He claims that he was passed over for promotion at least in part because of his engagement to a black woman. He also alleges that he confronted Mr. Walters in an attempt to resolve his grievance but that his employment discrimination complaint was rejected on the ground that the White House staff were not subject to Title VII of the Civil Rights Act of 1964.

In June 1993, Mr. Haddon filed suit in the U.S. District Court for the District of Columbia alleging that the Executive Residence had violated Title VII, as amended. After briefing and argument, the district court granted Mr. Walters' motion to dismiss for lack of subject-matter jurisdiction. *Haddon v. Walters*, 836 F.Supp. 1, 3 (D.D.C.1993). Mr. Haddon filed a timely notice of appeal. While his appeal was pending, Mr. Haddon moved the district court for relief from its final order on the ground that further research had revealed additional evidence of prior White House compliance with Title VII. The district court denied the motion.

### B. Statutory Framework

In 1972, Congress amended Title VII to extend its prohibition of discrimination based on race, color, religion, sex, or national origin to personnel actions affecting most federal employees. 42 U.S.C. § 2000e–16 (1988 & Supp. III 1991) ("section 2000e–16"). In pertinent part, section 2000e–16 applies to "employees ... in executive agencies as defined in section 105 of Title 5." 42 U.S.C.

§ 2000e–16(a). Section 105 of Title 5 in turn defines an executive agency as "an Executive department, a Government corporation, [or] an independent establishment." 5 U.S.C. § 105 (1988). In 1991, Congress further amended Title VII to cover certain Presidential appointees not already covered by section 2000e–16. 2 U.S.C. § 1219 (Supp. III 1991) ("1991 Amendments" or "section 1219").

Sections 2000e–16 and 1219 prescribe different paths for obtaining judicial review. Section 2000e–16 authorizes a party who has exhausted his administrative remedies and who is aggrieved "by the final disposition of his complaint, or by the failure to take final action on his complaint," to file a civil action in the district court. 42 U.S.C. §§ 2000e–5(f)(3) & 2000e–16(c) (1988 & Supp. III 1991). Section 1219, however, provides that a Presidential appointee may file a complaint with the Equal Employment Opportunity Commission, "or such other entity as is designated by the President by Executive Order," and that any party aggrieved by a final order disposing of such a complaint may petition for review by the United States Court of Appeals for the Federal Circuit. 2 U.S.C. § 1219(a)(2) & (3)(A). Thus, whether or not section 1219 applies to Mr. Haddon, it cannot be the basis for jurisdiction in the district court. The question before us, then, is whether he is covered by section 2000e–16.

## II. DISCUSSION

■ Mr. Haddon argues that the district court erred when it concluded that he was not covered by section 2000e–16. That section provides, in pertinent part:

All personnel actions affecting employees or applicants for employment ... *in executive agencies as defined in section 105 of Title 5* (including employees and applicants for employment who are paid from nonappropriated funds) ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–16(a) (emphasis added). This case turns on whether the Executive Residence is an "executive agency" within the meaning of section 2000e–16. As defined by reference to 5 U.S.C. § 105, executive agency "means an Executive department, a

Government corporation, and an independent establishment." The Executive Residence is not included in Title 5's exclusive list of Executive departments. 5 U.S.C. § 101 (1988). Nor does it fit within Title 5's definition of a Government corporation. 5 U.S.C. § 103 (1988). By process of elimination, section 2000e–16 applies to Mr. Haddon if and only if the Executive Residence is an "independent establishment."

Title 5 defines "independent establishment" to mean

(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and

(2) the General Accounting Office.

5 U.S.C. § 104 (1988). Although this definition of independent establishment does not clearly foreclose Mr. Haddon's argument, he fails to explain how the Executive Residence fits within the compass of that term. We conclude that it does not ·for two reasons.

First, we note that elsewhere Congress has used the term "independent establishment" in distinction to the Executive Residence. Specifically, Congress has authorized "[t]he head of any department, agency, or *independent establishment of the executive branch* of the Government [to] detail, from time to time, employees of such department, agency, or establishment to the White House Office, the *Executive Residence at the White House,* the Office of the Vice President, the Domestic Policy Staff, and the Office of Administration." 3 U.S.C. § 112 (1988) (emphasis added). That Congress distinguished the Executive Residence from the independent establishments, whatever they may be, suggests that Congress does not regard the Executive Residence to be an independent establishment, as it uses that term.

Second, while Title 5 relates to government organization and employees and prescribes pay and working conditions for agency employees, *see, e.g.,* 5 U.S.C. § 7103(a) (1988 & Supp. III 1991), Title 3 addresses similar concerns with respect to the President's advisors and the staff of the Executive

Residence. *See, e.g.,* 3 U.S.C. § 105(b)(1) (1988) (authorizing the President "to appoint and fix the pay of employees in the Executive Residence at the White House without regard to any other provision of law regulating the employment or compensation of persons in the Government service"). Accordingly, as Mr. Walters argues, section 2000e–16's incorporation of *Title 5's* definition of executive agency further suggests that it does not apply to the staff of the Executive Residence.

Mr. Haddon contends, finally, that the administrations of prior Presidents read section 2000e–16 more broadly than we do and that their interpretations of the statute deserve great deference. In support of this contention, he cites a conclusory Executive Order issued by President Carter and a "Stipulation of Compromise" that was entered into by the Nixon Justice Department in a case involving a discrimination claim. Neither explains why it should be concluded that the "White House Office" is subject to section 2000e–16; nor are these documents analogous to an administrative agency's construction of a statute it has been entrusted to administer, with respect to which we generally require a reasoned explanation for a departure from past practice. Therefore, we hold that the Executive Residence is not an executive agency within the meaning of section 2000e–16.

While Mr. Haddon's section 2000e–16 claim fails to present a cause of action on which relief could be granted, we cannot accept the district court's conclusion that it lacked subject-matter jurisdiction over it even though we are aware that at least one circuit has reached the same conclusion under similar circumstances. *See Dumas v. Town of Mt. Vernon,* 612 F.2d 974, 980 (5th Cir.1980). Mr. Haddon's claim arises under the laws of the United States. That suffices to establish the district court's jurisdiction "[u]nless the alleged claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or [is] wholly insubstantial and frivolous." *Kleiman v. Department of Energy,* 956 F.2d 335, 339 (D.C.Cir.1992) (internal quotation marks, ellipsis and citation omitted). As the Supreme

Court stated in *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946):

> Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.... Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*See also Associated Dry Goods Corp. v. EEOC,* 419 F.Supp. 814, 818 (E.D.Va.1976) ("Defendant's assertion that the sections of federal law cited by plaintiff are not applicable to the instant case does not defeat jurisdiction, but rather contests whether the plaintiff has stated a cause of action.").

█ Although Mr. Haddon brought this action under Title VII of the Civil Rights Act "as amended," and although he may have alleged facts that would support a claim for relief under the 1991 Amendments, we do not remand the case in order to allow him to pursue this alternative theory. Were we to do so, the district court would quite properly dismiss the claim for want of jurisdiction. *See* 2 U.S.C. § 1219(a)(2) & (3)(A).

### III. CONCLUSION

Because we hold that Mr. Haddon has failed to present a claim on which the district court could grant relief and because "we may affirm on different grounds the judgment of a lower court if it is correct as a matter of law," *Kleiman,* 956 F.2d at 339 (internal quotation marks and citation omitted), we affirm the judgment of the district court. We do so, however, without prejudice to any right Mr. Haddon may have to pursue a section 1219 claim in the appropriate forum.

*So ordered.*