# Applicability of the Federal Vacancies Reform Act to Vacancies at the International Monetary Fund and the World Bank

The United States Executive Director and the Alternate United States Executive Director at the International Monetary Fund and the World Bank are not part of an Executive agency, and therefore vacancies in those offices are not covered by the Federal Vacancies Reform Act.

May 11, 2000

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE TREASURY

You have requested our opinion whether the Federal Vacancies Reform Act ("Vacancies Reform Act" or "Act"), 5 U.S.C. §§ 3341–3349d (Supp. IV 1998), applies to vacancies in the offices of the United States Executive Director ("USED") and the Alternate United States Executive Director ("Alternate USED") at the International Monetary Fund ("IMF").[1] This memorandum confirms our oral advice that the Act does not apply to these offices. By its terms, the Act applies only to a Senate-confirmed office "of an Executive agency." We believe that the better view, based on the information provided by the Treasury Department, is that the U.S. representatives are not part of an "Executive agency" and are therefore not covered by the Act.

After our oral advice about the U.S. representatives to the IMF, you asked for our opinion whether the Vacancies Reform Act applies to vacancies in the offices of the United States Executive Director and the Alternate United States Executive Director at the International Bank for Reconstruction and Development ("World Bank"). The Treasury Department has informed us that the USEDs and Alternate USEDs at the IMF and the World Bank are similar with regard to the relevant facts discussed in this opinion. On that basis, we conclude that the USED and Alternate USED at the World Bank are similarly outside the scope of the Vacancies Reform Act because they are not part of an "Executive agency."

## I. The United States Representatives to the IMF

A. *The United States Executive Director and Alternate United States Executive Director*

The IMF was established under an agreement negotiated at the 1944 Bretton Woods Conference. *See* IMF, *What is the International Monetary Fund?, available at* http://www.imf.org/external/pubs/ft/exrp/what.htm (visited Mar. 29, 2000) ("IMF Website Summary"). The United States agreed to join the IMF in 1945

---

[1] In this memorandum, the USED and the Alternate USED at the IMF are referred to jointly as the "U.S. representatives to the IMF" or, simply, the "U.S representatives."

58

under the authority of the Bretton Woods Agreements Act. *See* 22 U.S.C. § 286 (1994). An international organization currently made up of 182 member countries, the IMF promotes international monetary cooperation, facilitates the expansion and balanced growth of international trade, and promotes exchange stability. *See* IMF Website Summary; Articles of Agreement of the International Monetary Fund, art. I, *available at* http://www.imf.org/external/pubs/ft/aa (visited Mar. 29, 2000) ("Articles of Agreement").

The authority of the IMF is vested in a Board of Governors, consisting of a Governor and an alternate Governor from each member country. *See* Articles of Agreement, art. XII, § 2; IMF Website Summary. The Board of Governors has delegated substantial authority to the IMF's Executive Board, and it is the Executive Board that carries out the IMF's day-to-day operations and makes most of its decisions. *See* Articles of Agreement, art. XII, §§ 2 & 3; By-Laws, Rules, and Regulations of the International Monetary Fund, § 15, *available at* http://www.imf.org/external/pubs/ft/bl (visited Mar. 29, 2000); William N. Gianaris, *Weighted Voting in the International Monetary Fund and the World Bank*, 14 Fordham Int'l L.J. 910, 913–14 (1990/1991). The Executive Board is made up of 24 Executive Directors, with a Managing Director serving as chairperson. Articles of Agreement, art. XII, § 3(b). Eight of these Executive Directors represent individual member countries, including the United States, and each of these eight Executive Directors is appointed by the country that he or she represents. The remaining sixteen are elected by the Governors and represent groupings of the remaining member countries. *See id.* Sched. E; IMF Website Summary.

The Executive Director and the Alternate Executive Director for the United States are appointed by the President, by and with the advice and consent of the Senate, to two-year terms, with the right to hold over in office until a successor has been appointed. 22 U.S.C. § 286a(a), (b) (1994). The USED and Alternate USED serve as representatives of the United States and present this Government's views at the IMF. *See* IMF Website Summary; Letter for David R. Brennan, Deputy General Counsel, Department of the Treasury, from Margery Waxman, General Counsel, Office of Personnel Management, *Re: Whether the U.S. Alternate Executive Director of IMF is Within the Executive Branch for the Purpose of Qualifying for SES Benefits under 5 U.S.C. § 3392(c)*, at 4 (Nov. 4, 1980) ("OPM Opinion") ("[T]hese positions are designed to serve the President in the exercise of his Executive branch functions concerning the implementation of foreign policy."). The Secretary of the Treasury ("Secretary") has principal responsibility for instructing the U.S. representatives to the IMF on the positions and votes of the United States. *See, e.g.,* Exec. Order No. 11269, at § 3(a), *reprinted as amended in* 22 U.S.C. § 286b note (1994); 22 U.S.C. §§ 262h, 262k(b), 262m–2(b), 286a(d)(3); 286e–8; 286e–13 (1994).

59

## B. *The Federal Vacancies Reform Act*

Except for those offices expressly exempted by 5 U.S.C. § 3349c, the Vacancies Reform Act applies to any vacancy in an office of an "Executive agency" to which appointment is required to be made by the President, with the advice and consent of the Senate.[2] The USED and the Alternate USED are both appointed by the President, with the Senate's advice and consent, 22 U.S.C. § 286a(a), (b), and neither office is expressly excluded from coverage by 5 U.S.C. § 3349c. Accordingly, the critical issue in determining whether the Vacancies Reform Act applies to the USED and the Alternate USED is whether they are officers "of an Executive agency" within the Act.

The use of the phrase "of an Executive agency" imposes a meaningful limitation on the scope of the Act. "Executive agency" is a specific, defined term in title 5, and is narrower than the executive branch as a whole. *See Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995). The Vacancies Reform Act incorporates the title 5 definition of an "Executive agency," except that the Act adds the Executive Office of the President to the definition and excludes the General Accounting Office. *See* 5 U.S.C. § 3345(a); *see also* S. Rep. No. 105–250, at 12 (1998) ("'Executive agency' is defined at 5 U.S.C. § 105."); *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 61–62 (1999). By its plain language, therefore, the Act does not necessarily reach all Senate-confirmed offices, but only those in "an Executive agency."

To be sure, at least one statement in the legislative history of the Act could support the proposition that Congress intended to cover all Senate-confirmed offices in the executive branch, except for those offices expressly excluded by § 3349c:

> Section 3345 states that the provisions of the Act will apply to any officer in any executive agency, other than the General Accounting Office, if that officer's appointment is made by the President, subject to the advice and consent of the Senate. Unlike current law, *this change will make clear that the Vacancies Act, as amended by this legislation, applies to all executive branch officers whose appointment requires Senate confirmation, except for those officers described in Section 3349c.*

144 Cong. Rec. S12,824 (daily ed. Oct. 21, 1998) (statement of Sen. Byrd) (emphasis added). Nevertheless, this remark in a floor statement, which does not even specifically address the possibility that a Senate-confirmed office in the

---

[2] The Vacancies Reform Act is not necessarily the only method, however, of filling such offices on a temporary basis. The Act also expressly preserves other statutory authorities that designate a specific officer to serve as the acting officer for a vacant office or that authorize the President, a court, or the head of an Executive department to designate an acting officer 5 U.S.C § 3347(a)(1).

Executive branch might be outside any "Executive agency," cannot overcome the plain language defining the reach of the Act.

Section 105 defines an "Executive agency" as "an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105 (1994). These three terms are defined in §§ 101, 103, and 104 of title 5. Neither the IMF nor the office of the U.S. representatives to the IMF is a "Government corporation." Accordingly, whether the USED and the Alternate USED are officers of an Executive agency turns on whether they are in either (i) an Executive department or (ii) an independent establishment.

## C. *Are the United States Executive Director and Alternate United States Executive Director Part of the Department of the Treasury?*

Because the Department of the Treasury is an Executive department, *see* 5 U.S.C. § 101, an officer in the Department of the Treasury is an officer of an Executive agency within the Act. *Cf.* Memorandum for Files, from Daniel L. Koffsky, Acting Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Permanent Representative to the United Nations* (July 14, 1998) ("1998 UN Memo") (concluding that the United States Permanent Representative to the United Nations is in the State Department and therefore an officer of an Executive agency). The information provided to us by the Treasury Department indicates that the Treasury Department has a more direct and substantial relationship with the U.S. representatives to the IMF than does any other Executive department. If the U.S. representatives are *within* any Executive department, that department would be the Treasury Department.

Although the issue is not entirely free from doubt, we conclude that, on balance, the better view is that the USED and the Alternate USED are not in the Department of the Treasury. In an Appendix, we set out the factors relevant to the analysis. Some of these factors strongly indicate that the U.S. representatives are not part of the Treasury Department. Although others might suggest that the U.S. representatives are in the Treasury Department, a closer examination reveals that the relationship of the U.S. representatives to the Treasury Department is quite limited in scope and frequently ambiguous even within that limited area.

For some of the most central elements of personnel administration, the U.S. representatives are unconnected to the Department of the Treasury. The Treasury Department is not responsible for setting or paying the salaries of the U.S. representatives. *See* 22 U.S.C. § 286a(d). Nor does the Treasury Department carry the U.S. representatives on its employment rolls. Furthermore, the staff for the U.S. representatives are not Treasury Department employees, but instead are employees of the IMF; and if they come to the IMF from the Treasury Department, they are officially separated from the Treasury Department, removed from

the Treasury Department's employment rolls, and transferred to the employment of the IMF.[3]

The Vacancies Reform Act appears in Title 5 and uses Title 5's definition of "Executive agency." Title 5 largely deals with personnel matters. If, for these essential aspects of personnel administration, the U.S. representatives have no connection to the Treasury Department, the compelling implication is that the U.S. representatives are not located in the Treasury Department.

The strongest factor potentially arguing in favor of the view that the U.S. representatives to the IMF are part of the Treasury Department is that they receive their instructions through the Secretary of the Treasury. *See, e.g.*, Exec. Order No. 11269, at § 3(a), *reprinted in* 22 U.S.C. § 286b note (delegating to the Secretary the President's authority to instruct United States representatives to the international financial organizations). This factor alone, however, does not mean that the U.S. representatives to the IMF are part of the Treasury Department. By statute, the power to instruct is vested in the President, not the Secretary of Treasury. As a practical matter, the President cannot personally perform all of the duties for which he is ultimately responsible, and here he has chosen to delegate the task of conveying the Government's instructions. That the President has determined that the Secretary of Treasury is best suited to be principally responsible for providing the instructions to the U.S. representatives cannot, as a legal matter, make the U.S. representatives part of the Treasury Department.

Moreover, the history by which the Secretary became responsible for instructing the U.S. representatives to the IMF is consistent with the view that they are not part of the Treasury Department. Originally, in the Bretton Woods Agreements Act of 1945, Congress made the National Advisory Council on International Monetary and Financial Problems responsible for instructing the U.S. representatives, under the general direction of the President. 22 U.S.C. § 286b(b)(4). In 1965, President Johnson abolished the Council and transferred to himself all of its functions, including the responsibility for instructing the U.S. representatives to the IMF. Reorg. Plan No. 4 of 1965, at §§ 1(b) & 3(a), *reprinted in* 5 U.S.C. app. at 1519 (1994). In a 1966 Executive Order, the President delegated to the Secretary of Treasury the authority to instruct the representatives. Exec. Order No. 11269, at § 3(a), *reprinted in* 22 U.S.C. § 286b note. It thus seems quite unlikely that the U.S. representatives would originally have been considered within the Department of the Treasury; and nothing in the later history of the President's delegation to the Secretary of his authority to instruct the U.S. representatives indicates that, in addition to delegating the authority to instruct, the President

---

[3] On rare occasions, additional Treasury employees, beyond the usual staff of the U.S. representatives, may be detailed to the IMF. Under such details, the individual would remain a Treasury employee Such details may be, and are, also made to a range of international organizations under the same authority and conditions as they are made to the IMF. As details of Treasury employees to the UN Secretariat would not suggest that the UN Secretariat is part of the Treasury Department, details to the IMF also do not suggest that the U.S. representatives are part of the Treasury Department

intended to transfer the legal, administrative location of the U.S. representatives to the Treasury Department. Nor does Congress's passage, after the Executive Order, of statutes directing or authorizing the Secretary to instruct the U.S. representatives as to certain specific issues, *see, e.g.*, 22 U.S.C. §§ 262h, 262k(b), 262m–2(b), 286a(d)(3), 286e–8, 286e–13, show any intent to alter the administrative location of the U.S. representatives. These statutes appear to reflect the reality of the delegation made by the Executive Order, rather than any unstated intent to move the U.S. representatives into the Treasury Department.

The Treasury Department has some responsibility for the bookkeeping and agency contributions associated with the U.S. representatives's receipt of certain employment benefits, *see* 22 U.S.C. § 276c–2 (Supp. IV 1998), but the provision assigning this task ultimately serves to demonstrate that the U.S. representatives are *not* otherwise part of the Treasury Department. Under § 276c–2, "[t]he Treasury Department shall serve as the employing office" in administering the employment benefits. If the U.S. representatives were already part of the Treasury Department, there would be no need for the statute to specifically denominate Treasury as the employing office, because it would already be the employing office as a result of the administrative location of the U.S. representatives.[4]

Finally, although the Treasury Department gives ethics advice to the U.S. representatives, we have been informed that it does not do so as a result of any determination that it is legally required to take this role. Furthermore, the Secretary of Treasury, we understand, probably has never been asked to grant the U.S. representatives a waiver under the authority of 18 U.S.C. § 208 (1994), as delegated by the President to agency heads with respect to Presidential appointees in their agencies, *see* Exec. Order No. 12731, § 401, 3 C.F.R. 306 (1991).

As these factors show, the determination whether the U.S. representatives are part of the Treasury Department requires fact-specific analysis, and the limited situations in which this Office has previously addressed whether an officer or entity is part of an Executive department do not present perfect analogies. Nevertheless, we believe that our prior advice in those cases is consistent with the conclusion here that the U.S. representatives are not part of the Treasury Department.

We have twice before considered the somewhat analogous question of whether the United States Mission to the United Nations ("Mission") is in the Department

---

[4] It could also be argued, more generally, that no separate provision would be needed to provide these benefits, which are available generally to members of the civil service within the Treasury Department, if the U.S. representatives were already employed there. Further, § 276c–2 places "in the discretion of the Secretary of the Treasury" the decision whether to provide these benefits to the U.S. representatives It would arguably be anomalous for Congress to vest the Secretary with such discretion regarding the benefits of U.S. representatives if they were part of Treasury, since that discretion does not exist as to other employees and officers of the Treasury Department While we tend to think that this is further evidence that the U.S representatives are not within the Treasury Department, we also recognize that there is a counter argument to this line of reasoning — namely, that an express grant of benefits was necessary to overcome the prohibition in 22 U S C § 286a(d)(1) on any person's receiving "any salary or other compensation from the United States" for serving as an Executive Director or Alternate at the IMF or World Bank. As a result, we do not place any reliance on this argument in concluding that the U.S representatives are not part of the Treasury Department.

of State. In the first of these matters, the status of the Mission determined both whether a vacancy in a Senate-confirmed position in the Mission could be filled under the old Vacancies Act and whether a Senate-confirmed officer, also in the Mission, could be the officer designated by the President to fill that vacancy. *See* Memorandum for Files, from Daniel L. Koffsky, Special Counsel, Office of Legal Counsel, *Re: Vacancy at United States Mission to the United Nations* at 1 (Apr. 8, 1996) ("1996 UN Memo"). In the second of these matters, we re-affirmed our conclusion that the Mission was in the State Department and con-cluded that therefore the United States Permanent Representative to the United Nations could be detailed under the unamended Vacancies Act to fill a vacancy in the Department of Energy. *See* 1998 UN Memo at 1. Although a significant factor in the Office's conclusion that the Mission is in the State Department was that instructions for the Permanent Representative were sent through the Secretary of State, there the Secretary's power to give instructions was statutory, and in any event that power was not the sole or determinative factor. *See* 1996 UN Memo at 1–2; 1998 UN Memo at 2. To the contrary, the conclusion was premised on a significant number of additional factors demonstrating the Mission's administra-tive location within the State Department. We noted, among other factors, that the State Department exercises fiscal control over the Mission through control of the Mission's appropriations; the Permanent Representative is carried on the State Department's employment rolls; there is a "home desk" for the Mission within the State Department; the administrative officers within the State Depart-ment treat the Permanent Representative as an official of the Department; the State Department handles the FOIA, whistleblower, and ethics work for the Mission; and the Inspector General for the State Department exercises jurisdiction over the Mission. *See* 1996 UN Memo at 2; 1998 UN Memo at 2. As demonstrated above and in the information in the Appendix, these factors are generally not present with regard to the U.S. representatives. Moreover, unlike the situation with the U.S. representatives and Treasury, there were no significant factors indicating that the Mission was not part of the State Department.[5] *See also, e.g.,* Memorandum for Ginger Lew, General Counsel, Department of Commerce, from Dawn Johnsen, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: ADEA and Regional Fishery Management Councils* at 4 & n.1 (Mar. 14, 1995) ("Regional Fishery Management Councils Opin."); Memorandum for Frank K. Richardson, Solicitor, Department of the Interior, et al., from Larry L. Simms, Deputy Assist-ant Attorney General, Office of Legal Counsel, *Re: Status of the Navajo and Hopi*

---

[5] The only potentially contrary factor identified was an inconsistency among State Department wire diagrams; some clearly identified the Permanent Representative as part of the State Department, whereas other wire diagrams appeared to suggest that the Mission had a relationship to State more akin to an independent agency. 1998 UN Memo at 2 n 1. The Treasury organizational charts and wire diagrams, in contrast, are consistent in not including the U.S representatives as part of the Treasury Department

*Indian Relocation Commission and Removability of its Commissioners* at 10–11 (Jan. 17, 1985).[6]

### D. *Do the United States Representatives to the IMF Constitute an Independent Establishment?*

Because the U.S. representatives to the IMF are neither in a Government corporation nor part of an executive department, they are part of an Executive agency only if they are an independent establishment. Section 104 defines an independent establishment as follows: "For the purpose of this title, 'independent establishment' means — (1) an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and (2) the General Accounting Office." 5 U.S.C. § 104. While this definition is quite broad, its plain language requires that a collection of offices meet three requirements in order to constitute an independent establishment: (1) it must be an "establishment"; (2) it must be "in the executive branch"; and (3) it must not be a part of an Executive department, military department, Government corporation, or another independent establishment. The U.S. representatives to the IMF can satisfy the third requirement, but not the first two. Accordingly, we conclude that they are not an independent establishment within the meaning of § 104.

To the extent that the U.S. representatives are an indivisible part of the IMF, they would only be part of an independent establishment if the IMF is itself an independent establishment. The IMF, however, is not within the executive branch. It is instead an international institution made up of representatives from over 180 member countries. *See* OPM Opin. at 3 ("IMF clearly is not within the Executive Branch"). As a result, IMF as a whole cannot constitute an independent establishment.

Further, while the U.S. representatives may be officers in the executive branch, *see* OPM Opin., their "office" at IMF does not constitute an "establishment." The term "establishment" embodies the idea of a free-standing entity with its own structure and unity. For example, one dictionary defines "establishment," in relevant part, as follows:

> c: a permanent civil or military force or organization; d: a more or less fixed and usu. sizable place of business or residence together with all the things that are an essential part of it (as grounds, fur-

---

[6] Nor is our conclusion here inconsistent with OPM's conclusion that the Alternate USED is within the executive branch for the purpose of qualifying for SES benefits OPM Opin at 3–5. The question whether a position is within the executive branch is different from whether it is within the Treasury Department or whether the U.S representatives constitute an independent establishment. Moreover, OPM, in discussing persons who went from Treasury to be the Alternate USEDs, states that, although they never left the executive branch, they left the Treasury Department. *Id.* at 4–5.

> niture, fixtures, retinue, employees); e: a public or private institution (as a school or hospital)

Webster's Third New International Dictionary of the English Language, Unabridged 778 (1993). The office of the U.S. representatives is not of this character. It is not in any sense an independent, free-standing establishment. It is instead a component part of the IMF. The office is fully funded by the IMF, with the IMF setting and paying the compensation of the U.S. representatives and their staff, as well as the office's operating expenses. The office, moreover, with the exception of the U.S. representatives, is staffed by employees of the IMF who owe their principal obligations to the IMF, rather than the federal government. *See* By Laws of the IMF, Rule N–3 (employees of the IMF, in contrast to representatives of the member nations, owe their exclusive loyalty to the IMF); OPM Opin. at 4 ("[W]e would make the distinction between [U.S. representatives] and United States employees who transfer to international organizations to serve the organizations in their area of expertise without any direct accountability to the United States.").

Beyond the language of the statute, there is little relevant guidance in OLC opinions, case law, or the legislative history of § 104. On a few occasions, we have considered whether an entity is an independent establishment. These matters, however, generally involved situations in which it was clear that the entity was an establishment and was in the executive branch; the only question was whether it was independent or a part of an Executive department. For example, we concluded that the Commission on Fine Arts is an independent establishment because it is a congressionally created, free-standing entity entirely financed by the federal government. Memorandum for Charles H. Atherton, Secretary, Commission of Fine Arts, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Application of Executive Order 11988, entitled "Floodplain Management," to the Commission of Fine Arts* at 2–3 (Nov. 14, 1980); *see also, e.g.,* Memorandum for Edward A. Frankle, General Counsel, NASA, from J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, *Re: Department of Transportation Licensing Under the Commercial Space Launch Act* at 16 (Nov. 15, 1990) (concluding NASA is an independent establishment because it has a presidentially appointed head who is responsible for exercise of all powers of NASA under only the supervision and direction of the President); Regional Fishery Management Councils Opin. at 4 & n.1 (the Councils are part of Commerce because their primary purpose is to advise the Secretary, the majority of voting members are appointed by the Secretary, the Secretary controls what administrative staff Councils may have and the procedures the Councils follow, and Commerce pays the compensation and expenses of the Councils and their staffs).

With regard to the definition of "executive agency" set out in 40 U.S.C. § 472(a) (1994), which we compared to the "nearly identical language in the definition of 'executive agency' in title 5's general provision (5 U.S.C. § 105)," we noted that certain less substantial and well delineated entities within the Executive Office of the President might not constitute independent establishments. Memorandum for Bernard Nussbaum, Counsel to the President, from Daniel L. Koffsky, Acting Assistant Attorney General, *Re: Use of GSA Authority to Accept Gift of Equipment* at 5–6 (Aug. 3, 1993). In particular, we concluded that while the Executive Office of the President and some of its principal components, such as the Office of Management and Budget, appear to fall within the ordinary meaning of an independent establishment, "[i]t is much less certain whether more *ad hoc* and less formal entities under the [Executive Office of the President] would meet this definition." *Id.* at 5; *see also Haddon*, 43 F.3d at 1489–90 (staff of the Executive Residence are not employees within an Executive agency).[7]

## E. *Conclusion*

We recognize that Congress may not have had any specific intent to exclude these offices from the scope of the Vacancies Reform Act. By its terms, however, the Vacancies Reform Act applies only to vacancies in Senate confirmed offices that are part of an "Executive agency." While this defined term is quite broad and includes almost all Senate confirmed, executive branch offices, its use in the Act has the consequence that, to be covered by the Act, an office must be not just an office in the executive branch, but an office in an Executive department, Government corporation, or independent establishment. Because the U.S. representatives to the IMF are not part of an Executive department, Government corporation, or independent establishment, vacancies in those offices are not covered by the Vacancies Reform Act. We stress, however, that the category of executive branch offices that are not part of an Executive agency is extremely narrow. In fact, that category may well be limited to a set of offices within international financial institutions that are similarly situated to the United States Executive Director and Alternate United States Executive Director at the IMF.

## II. The United States Representatives to the World Bank

The Department of the Treasury has informed us that the United States Executive Director and the Alternate United States Executive Director at the World Bank are similarly situated to the USED and Alternate USED at the IMF with regard to the factors relevant to our determination that the USED and Alternate USED

---

[7] Section 104 of title 5 was added as a new provision to the United States Code as part of the codification of title 5. *See* Pub L. No 89–554, 80 Stat. 378, 379 (1966). The revision notes on § 104 contained in the House and Senate reports are brief and do not shed light on the issue considered in this memorandum *See* H.R. Rep. No. 89–901, at 6 (1965), S Rep No 89–1380, at 22–23 (1966).

at the IMF are not covered by the Vacancies Reform Act. Accordingly, for the reasons discussed in part I of this memorandum, vacancies in the offices of the United States Executive Director and the Alternate United States Executive Director at the World Bank also are outside the coverage of the Vacancies Reform Act.

## Conclusion

Because the United States Executive Directors and the Alternate United States Executive Directors at the IMF and the World Bank are not part of an ''Executive agency,'' vacancies in those offices are not covered by the Vacancies Reform Act.

DANIEL L. KOFFSKY
*Acting Deputy Assistant Attorney General*
*Office of Legal Counsel*

## APPENDIX

Our conclusion is based on the following information about the U.S. representatives to the IMF and their relationship with the Treasury Department:[8]

> \* The U.S. representatives receive instructions on voting and policy matters from the Secretary of the Treasury. *See, e.g.,* Exec. Order No. 11269, at § 3(a), *reprinted as amended in* 22 U.S.C. § 286b note; 22 U.S.C. §§ 262h, 262k(b), 286a(d)(3).

> \* The U.S. representatives are eligible, in the discretion of the Secretary of the Treasury, to receive employee benefits: "Notwithstanding the provisions of any other law, [U.S. representatives at international financial organizations] shall, if they are citizens of the United States, in the discretion of the Secretary of the Treasury, each be eligible on the basis of such service and the total compensation received therefor, for all employee benefits afforded employees in the civil service of the United States." 22 U.S.C. § 276c–2; *see also* OPM Opinion, at 3 n.2 (Alternate USED eligible, in the discretion of the Secretary, for SES retirement benefits and health, life, and disability coverage).

> \* Section 276c–2 further provides: "*The Treasury Department shall serve as the employing office for collecting, accounting for, and depositing* in the Civil Service Retirement and Disability Fund, Employees Life Insurance Fund, and Employees Health Benefits Fund, all retirement and health insurance benefits payments made by these employees, and shall make any necessary agency contributions from funds appropriated to the Department of the Treasury." 22 U.S.C. § 276c–2 (emphasis added).

> \* Treasury provides ethics advice to the U.S. representatives, since the U.S. representatives do not have an internal source for such advice, and the U.S. representatives are directed to file disclosure forms and generally to comport themselves as if covered by the ethics rules. Nevertheless, the Treasury Department does not perform these functions as a result of any determination that it is legally required to take this role, and Treasury seriously doubts that it has ever been asked to provide a § 208(b) waiver to any USED or Alternate USED.

---

[8] Except for various of the statutory references, this information was provided to us by the Department of the Treasury

\* The salaries of the U.S. representatives are set and paid by the IMF. *See* 22 U.S.C. § 286a(d)(1) ("No person shall be entitled to receive any salary or other compensation from the United States for services as a Governor, executive director, councillor, alternate, or associate."). Federal law limits the salaries that IMF may pay the U.S. representatives, capping them at the rate of a level IV of the Executive Schedule for the USED and a level V for the Alternate USED. *Id.* § 286a(d)(2). *See also* Foreign Operations, Export Financing, and Related Agencies Appropriations Act, 1999, Pub. L. No. 105–277, § 534, 112 Stat. 2681, 2681–181 (1998) (annual appropriations rider prohibiting payment of appropriate funds to an international financial institution if statutory pay prohibitions are violated).

\* IMF is similarly responsible for the salaries of the staff and other expenses of the office of the U.S. representatives.

\* The office of the U.S. representatives is typically staffed by four to six additional people. The secretaries who work in the office are employed by the IMF. The office also typically includes an advisor and two or three assistants who are usually from Treasury. These individuals are transferred to the IMF under 5 U.S.C. § 3582 (1994 & Supp. IV 1998). Upon being transferred to the IMF, these individuals are separated from Treasury and are no longer Treasury employees. They are not carried on Treasury's books and are not covered by the conflict-of-interest rules or standards of conduct applicable to Treasury employees. The only elements of employment that they retain are re-employment rights and the right to count their years of service at the IMF toward retirement eligibility.[9]

\* In a few instances, Treasury employees have also been detailed to the office of the U.S. representatives under 5 U.S.C. § 3343 (1994) when there was a pressing need for additional assistance. These details are rare and have generally only been for short periods of time.

\* The IMF receives an annual lump-sum contribution from the United States. These contributions flow through Treasury, but

---

[9] *See also* OPM Opin. at 4 (distinguishing staff transferred from Treasury to assist the U S representatives from the representatives because the staff are "without any direct accountability to the United States" and "are separated from their United States employment for the period of their international service, and by statute, under prescribed conditions, are given reemployment rights to their former positions").

Treasury does not exercise any discretion over the payment or how the funds will be used by the IMF.

\* Treasury does not consider the U.S. representatives to the IMF to be part of Treasury for purposes of FOIA. More specifically, Treasury indicated that it does not ask the U.S. representatives for documents in responding to FOIA requests addressed to Treasury if, e.g., the request concerns questions about the international financial organizations. As a matter of interbranch cooperation, Treasury does provide information about the IMF in response to inquiries from Congress and the General Accounting Office.

\* The U.S. representatives are not treated as part of the Treasury Department in the Department's organizational charts and wire diagrams.