# Application of 18 U.S.C. § 603 to Contributions to the President's Re-Election Committee

Civilian executive branch employees do not violate 18 U.S.C. § 603 by contributing to a President's authorized re-election campaign committee.

May 23, 2003

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked whether our 1995 opinion that 18 U.S.C. § 603 (2000) would not bar civilian executive branch employees from making contributions to a President's authorized re-election campaign committee[1] retains continued vitality in light of the D.C. Circuit's opinion in *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995).

In our 1995 opinion, we construed the scope of the exception to section 603 coverage set forth in subsection (c) of section 603. Subsection (c) provides that the prohibition set forth in subsection (a) shall generally not apply to "any activity of an employee (as defined in section 7322(1) of title 5)." 18 U.S.C. § 603(c). Section 7322(1) of title 5 of the United States Code in turn defines "employee" to mean (in relevant part) "any individual, other than the President and the Vice President, employed or holding office in . . . an Executive agency other than the General Accounting Office . . . but does not include a member of the uniformed services." 5 U.S.C. § 7322(1) (2000). We concluded that the subsection (c) exception "applies to the entire executive branch with the possible exception of members of the uniformed services." 19 Op. O.L.C. at 106–07. Under this analysis, employees of the White House Office could make contributions to a President's authorized re-election campaign committee without violating section 603.

In *Haddon*, the D.C. Circuit ruled that the Executive Residence was not an "executive agency" within the meaning of 42 U.S.C. § 2000e-16 (2000). Section 2000e-16(a) proscribes (among other things) racial discrimination against employ-ees in "executive agencies as defined in section 105 of Title 5." In the course of determining that the Executive Residence was not an "executive agency" within the meaning of section 105, the court offered reasoning that would appear equally applicable to the White House Office. *See Haddon*, 43 F.3d at 1489–90.

There is arguable tension between our 1995 opinion, which treats the White House Office as an "Executive agency" for purposes of 5 U.S.C. § 7322(1), and *Haddon*, which suggests that the White House Office is not an "Executive agency" for purposes of 5 U.S.C. § 105 (2000) (which definition, by its terms, is "[f]or the

---

[1] *Whether 18 U.S.C. § 603 Bars Civilian Executive Branch Employees and Officers From Making Contributions to a President's Authorized Re-Election Campaign Committee*, 19 Op. O.L.C. 103 (1995).

purpose of this title"—i.e., title 5). For the following reasons, we think that the 1995 opinion continues to apply with full force in its limited realm.

First, the 1995 opinion was issued some four months *after* the ruling in *Haddon.* We have good reason to believe that this Office was aware of *Haddon* at the time the 1995 opinion was issued, and we therefore regard the omission of any discussion of *Haddon* in that opinion to be the result of a considered decision that *Haddon* did not bear meaningfully on the issue, rather than an oversight.

Second, although under *Haddon* the term "Executive agency" in section 105 of title 5 would not include the President, the Vice President, the White House Office, and certain other entities within the Executive Office of the President, *cf. Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992) (in absence of express statement by Congress, statute should not be read to apply to President); 3 U.S.C. ch. 2 (addressing White House operations separate from title 5), there would have been good reason to regard *Haddon* as not bearing significantly on the meaning of 5 U.S.C. § 7322(1). The definition of "employee" in section 7322(1) expressly excludes "the President and the Vice President." There would be no purpose to this exclusion if the President and Vice President were not otherwise understood to be "holding office in . . . an Executive agency" for purposes of section 7322(1). In addition, the exception to the substantive restriction on political activities in 5 U.S.C. § 7324(a) applies to certain employees who are "paid from an appropriation for the Executive Office of the President." *Id.* § 7324(b)(2)(B)(i). This provision appears to presuppose that employees paid by the Executive Office of the President (which includes employees of the White House Office) are employees of an "Executive agency" under section 7322(1). More generally, a reading of section 7322(1) that excluded employees of the White House Office from its scope might be thought to produce highly anomalous results. If the White House Office is not an "Executive agency" under section 7322(1), then employees of the White House Office would be entirely free from the restrictions of the Hatch Act Reform Amendments of 1993, Pub. L. No. 103-94, 107 Stat. 1001 (1993) ("HARA"), and would be able to engage in all sorts of partisan political activity. Indeed, HARA would no longer forbid a White House Office employee to "use his official authority or influence for the purpose of interfering with or affecting the result of an election," 5 U.S.C. § 7323(a)(1) (2000), or "run for the nomination or as a candidate for election to a partisan political office," *id.* § 7323(a)(3). In sum, as a result of features that appear to be unique to section 7322(1) and HARA generally, there are (and were at the time the 1995 opinion was issued) powerful reasons to conclude that the term "Executive agency" in section 7322(1) does not have the same meaning that section 105 of title 5 generally assigns it (and that cases like *Haddon* recognize) for the purpose of title 5.

Third, for similar reasons, even if *Haddon* were given a robust reading, the rule of lenity would appear to require that the section 603(c) exception be construed to apply to all civilian Executive Branch employees. Under this rule, "'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,' . . .

and . . . 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" *Jones v. United States*, 529 U.S. 848, 858 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971); *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22 (1952)).

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*
